# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| SHANGO BEY, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| vs. | )   Case No. 05-0448-CV-W-GAF-P |
| | ) |
| CHUCK DWYER, | ) |
| | ) |
|     Respondent. | ) |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS

Petitioner, Shango Bey, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on May 12, 2005, seeking to challenge his 2001 conviction and sentence for committing violence against a corrections officer, which was entered in the Circuit Court of Cole County, Missouri. Petitioner raises three grounds for relief: (1) trial court error in allowing the prosecution to introduce evidence of petitioner's "post-arrest silence" and for allowing the prosecution to cross-examine petitioner on that issue; (2)(a) ineffective assistance of trial counsel for failing to object to, and raise in a motion for a new trial, the prosecution's introduction of evidence of petitioner's post-arrest silence; (2)(b) ineffective assistance of trial counsel for questioning petitioner during direct examination about his failure to speak to investigators; (3)(a) ineffective assistance of direct appeal counsel for failing to argue on direct appeal that during its case-in-chief the State improperly introduced evidence of petitioner's post-arrest silence; and (3)(b) ineffective assistance of direct appeal counsel for failing argue on direct appeal that the trial court erred in sentencing petitioner as a prior offender.

Respondent does not state whether or not petitioner's grounds for relief are exhausted. However, respondent does contend that Ground 1 is either procedurally barred, or may be reviewed for plain error;

that Grounds 2 and 3(a) are without merit; and that Ground 3(b) is procedurally defaulted.

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> At approximately 3:00 p.m. on December 20, 2000, Corrections officer Ronnie Thompson worked as the supervisor of some housing units. At about 3:15 p.m., Officer Thompson observed Officer Collins standing in front of the stairwell to the housing units. Thompson watched as Bey struck Collins and kicked him down a flight of stairs. Thompson could see that Collins was hurt and bleeding. Thompson went to Collins' aid. As Thompson went around the edge of the stairwell, Bey struck him on the head and shoulder. Bey also tried to trip Thompson down the stairs, but Thompson was able to jump away from Appellant.
>
> Officer Derek Deen heard a banging noise on the stairs. Deen ran downstairs to see what had happened. Deen saw that Collins was bleeding, and he saw Bey leave the area. Deen followed Bey to his "walk" and tried to place him into his cell. Bey came after Deen and asked, "[y]ou want some too?" Deen told him, "[y]ou don't want to do that. Just go to your cell." Meanwhile, as other people began attending to Collins, Thompson saw Deen and Bey arguing. Thompson pulled a can of mace and ordered Bey to his cell; Bey complied and was not sprayed with mace.
>
> Dr. Charles Lundy, an emergency room physician, treated Collins. Collins was awake and alert when he entered the hospital, but he did not remember much of what had happened to him. Collins had sustained multiple bruises and cuts to his head and face.
>
> William Koebel, an investigator for the Missouri Department of Corrections, interviewed Collins and Thompson; as a result of his investigation, he issued Bey a conduct violation for assault. Koebel was also present when someone tried to interview Bey. Bey declined to make a statement, and the interview was terminated.
>
> Bey testified in his own defense. He denied hitting or kicking Collins, and he stated that he thought someone had struck Collins from behind, which caused him to stumble and fall down the stairs. Bey said that he pushed Thompson "to restrain" the officer "from macing" him. According to Bey, he refused to tell an investigator what had happened because he did not want to "rat" or "snitch" on the individuals present at the scene.

> The jury found Bey guilty. On December 3, 2001, Bey was sentenced to a fifteen-year term of imprisonment, to be served consecutively to the sentence he was serving at the time.

(Respondent's Exhibit "10," p. 1-2).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND 1 - IMPROPER STATEMENT BY THE PROSECUTION

In Ground 1, petitioner alleges that during direct examination of a Missouri Department of Corrections investigator, the prosecution elicited testimony that petitioner exercised his right to remain silent and did not speak to the investigator. Petitioner alleges that because the prosecution elicited this testimony, he was forced to testify on his own behalf and explain why he refused to speak to the investigator. Petitioner also alleges that this was a violation of his due process rights, his privilege against self-incrimination, and contravened the Supreme Court's holding in Doyle v. Ohio, 426 U.S. 610 (1996).

---

[1]"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-3-

Case 4:05-cv-00448-GAF   Document 13   Filed 09/12/05   Page 3 of 19

Because petitioner not did properly preserve this ground for direct appeal, it was reviewed for plain error by the Missouri Court of Appeals. Currently, there is a split within the Eighth Circuit with respect to plain error review and procedural bar. One line of cases stands for the proposition that "a properly limited plain error review by a state court does not cure a procedural default." *See e.g.*, Toney v. Gammon, 79 F.3d 693, 699 (8th Cir. 1996). Another line of cases holds that when a state court conducts a plain error review, we may also review for plain error. *See e.g.*, Hornbuckle v. Groose, 106 F.3d 253, 257 (8th Cir. 1997); Sweet v. Delo, 125 F.3d 1144, 1152 (8th Cir. 1997). Because of this split in circuit authority, the Court is free to choose which line of cases to follow. *See* Sweet, 125 F.3d at 1152. In this case, as in Hornbuckle and Sweet, the Court will review Ground 2 for plain error, because the state court appears to have done so.

On direct appeal, the Missouri Court of Appeals held as follows:

> In his first point on appeal, Shango Bey argues that the trial court plainly erred in permitting the prosecutor to elicit testimony on cross-examination of Bey and argue in closing that Bey failed to make an exculpatory statement after *Miranda* warnings. Bey argues that this violation of his Fifth and Fourteenth Amendment rights resulted in manifest injustice. Bey contends that the prosecutor asked him if this was the first time he had told this "story" and argued in closing that the jury should not believe him because he maintained his right to remain silent to the investigator at the prison.
>
> At trial Bey testified and on direct examination was asked: "[d]id an investigator attempt to interview you after this incident...or at a later time did any investigator come to see you about this incident?" Bey responded affirmatively. His attorney asked Bey why he didn't tell the investigator what happened at that point in time. Bey answered that the investigator wanted Bey to give him information about who assaulted Collins. He refused to identify individuals in the area because he had lived at JCCC and did not want to be a "snitch" or a "rat." Bey said he could get hurt if he ratted another inmate out and he has learned to mind his own business in JCCC.

-4-

During cross-examination, the State asked Bey about not wanting to rat out any other inmates. Bey reiterated that he felt that's what the investigator wanted him to do. The prosecutor asked, "Okay. But you refused to talk at all, right?" Bey responded, "[o]f course."

> Q. You didn't say, "I didn't do it. Somebody else did it, but I'm not gonna tell you who." You didn't say that, did you?
>
> A. I refused to cooperate at all.
>
> Q. So today is the first time that we're hearing this story about 30 inmates being there and you were behind somewhere and not involved in this in anyway?
>
> A. This wouldn't be the first time. I mean –
>
> Q. Well, who else have you told this story to?
>
> A. Well, during the first conduct violation that they gave me, some witnesses came forth then and basically provided the same statement.

In the State's rebuttal closing argument, the prosecutor made the following argument:

> Now, let's talk about the credibility of Shango Bey. He had a chance to tell his story last year to investigators. No, he didn't tell that story then. Today's the first time he came up with his story that he wasn't involved in any way.
>
> Here's the Defense Exhibit C. It's the paragraph at the bottom. The inmate states, "[w]atched witness but doesn't know their names. Refused to sign statement of rights. Inmate gave no statement."

The state contends the trial court did not plainly err in allowing the State to cross-examine Bey about whether his trial testimony was the first time he told his "story" and to argue the matter in closing argument, because the State's question and argument did not cause Bey to suffer manifest injustice in that (1) Bey "opened the door" as to his post-offense

-5-

communication during his direct examination; and, (2) the State may ask a defendant if he had ever told his "story" or version of events to anyone, not just law enforcement.

Bey's attorney did not object to the State's cross-examination of Bey or the State's closing argument. Nor did Bey raise the issue in his motion for new trial. Thus, this point is subject to only plain error review. Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or a miscarriage of justice has resulted therefrom. *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995); Rule 30.20. Manifest injustice is dependent upon the facts and circumstances of the particular case. *State v. Nolan*, 872 S.W.2d 99, 103 (Mo. banc 1994). The party asserting plain error has the burden to show manifest injustice. *State v. Wise*, 879 S.W.2d 494, 520 (Mo. banc 1994). Improper use of post-*Miranda* silence may constitute manifest injustice and, therefore, plain error. *State v. Zindel*, 918 S.W.2d 239, 241 (Mo. banc 1996).

Bey argues that the trial court plainly erred in permitting the prosecutor to cross-examine him and argue in closing that he failed to make an exculpatory statement after *Miranda* warnings. To support his contention, Bey cites *Doyle v. Ohio*, 426 U.S. 610 (1976), which holds that a prosecutor cannot impeach an accused's exculpatory story, told for the first time at trial, by cross-examining the accused about his failure to tell the story after receiving *Miranda* warnings at the time of arrest.

The prosecutor in the instant case did attempt to impeach Bey's exculpatory story by cross-examining him about his failure to tell the investigator that another inmate assaulted Collins and not Bey. During cross-examination, the prosecutor asked Bey, "[y]ou didn't say, 'I didn't do it. Somebody else did it, but I'm not gonna tell you who.' You didn't say that, did you?" However, Bey had explained in his direct testimony that he did not talk to the investigator and instead invoked his right to remain silent because he did not want to be a "snitch" or a "rat."

In *State v. Glessner*, 918 S.W.2d 270, 279 (Mo. App. 1996), the Southern District was faced with a similar set of facts. In *Glessner*, the appellant, on direct examination, told the jury why he said nothing to the officers after *Miranda* warnings. *Id.* Mr. Glessner testified that he could see the officers were convinced he was the culprit so he "didn't talk to them." *Id.* The prosecutor cross-examined Mr. Glessner about why he remained silent instead of explaining his innocence to authorities. The

-6-

*Glessner* court distinguished *Doyle* by explaining that in *Doyle* "the accused did not, on direct examination, say anything about his silence following the *Miranda* warnings. Consequently, Doyle does not address the issue here, i.e., the extent of permissible cross-examination on a matter referred to by the accused on direct examination." *Id.* at 280.

The *Glessner* court held that the appellant "opened the door" to allow the prosecutor to question him about his post-*Miranda* silence. *Id.* at 281. The court explained that by presenting exculpatory testimony on direct examination and explaining why he did not reveal such facts at the time of arrest, appellant opened the door to being cross-examined about his silence. *Id.* at 280-81.

Neither appellant nor respondent in this case cites *Glessner*. However, the State does argue that the prosecutor's cross-examination of appellant was allowed because Bey "opened the door" and injected the issue of why he did not talk to the investigator in the case.

Although *Glessner* appears to be dispositive of this point concerning the State's cross-examination, in the instant case, the State first, in its case-in-chief, introduced that Bey "did not waive his *Miranda* rights" when interviewed by Koebel. This fact was not present in *Glessner* where it was Mr. Glessner who first introduced to the jury his refusal to talk to investigators. Bey, however, does not argue that this particular evidence introduced by the State violated his right to due process of law and privilege against self-incrimination, but only argues that the State's cross-examination and closing argument violated his right. Therefore, Bey has not shown that he suffered a manifest injustice from the admission of the evidence that he "did not waive his *Miranda* rights" when interviewed by Koebel.

It follows that because Bey testified in direct examination about his post-*Miranda* silence, and because the State, therefore, was allowed to cross-examine Bey about this matter, the State must also be allowed to discuss this matter in closing argument. It was permissible for the State to argue that Bey's testimony was "the first time he came up with his story that he wasn't involved in any way."

The Supreme Court has instructed that relief should rarely be granted on an assertion of plain error as to matters contained in closing argument. *State v. Silvey*, 894 S.W.2d 662, 670 (Mo. banc 1995). In *State v. Clemmons*, 753 S.W.2d 901, 907-08 (Mo. banc), cert. denied, 488

-7-

> U.S. 948, 109 S. Ct. 380, 102 L. Ed. 369 (1988), the Supreme Court said, "A court should rarely grant relief on assertions of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." *See also*, *State v. Wallace*, 952 S.W.2d 395, 396 (Mo. App. 1997). There are no extraordinary circumstances in this case. Point denied.

(Respondent's Exhibit "6," pp. 3-8).

The resolution of petitioner's first ground for relief by the state courts did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Terry Williams v. John Taylor, 529 U.S. 362, 412-13 (2000).[2]

Ground 1 is denied.

## GROUND 2 - INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In Ground 2(a), petitioner alleges that his trial counsel was ineffective because he failed to object to the prosecution's introduction into evidence the fact that petitioner exercised his right to remain silent during questioning. Petitioner also alleges that his trial counsel was ineffective for failing to raise this issue in a motion for a new trial. In Ground 2(b), petitioner alleges that his trial counsel was ineffective because

---

[2]According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13.

he allowed petitioner testify on his own behalf for the purpose of explaining why petitioner remained silent during questioning.

In order to succeed on petitioner's claim of ineffective assistance of trial counsel, petitioner must establish that: (1) his counsel's performance was unreasonable as viewed in the totality of the circumstances; and (2) his defense was prejudiced by counsel's actions in that there is a reasonable probability that, but for counsel's unprofessional acts, the results of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 694-95 (1984); Schaeffer v. Black, 774 F.2d 865, 867 (8th Cir. 1985). Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. See, e.g., Strickland v. Washington, 466 U.S. at 687-90. Judicial scrutiny of counsel's performance must be highly deferential, id. at 689, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

On appeal from the denial of petitioner's Rule 29.15 motion, the Missouri Court of Appeals rejected this ground as follows:

> At trial, the State called William Koebel, an investigator for the Missouri Department of Corrections. Koebel interviewed James Collins and Ronnie Thompson about the incident that occurred at the prison; as a result; Koebel issued Appellant a conduct violation for assault. The following testimony ensued:
>
> > Q. Did you attempt to interview [Movant Bey]?
> > A. I did not. However[,] I was present in the room when an attempt was made to interview him.
> > Q. And did [Bey] cooperate at that interview?
> > A. He did not waive his Miranda rights, and the interview was terminated.
> > Q. Okay. Did you send over a request for prosecution to my office?

-9-

> [Defense Counsel]: Objection, leading.
> [The court]: That objection is overruled.
> A. [by Koebel]: Yes.

In his amended motion, Bey alleged that "[t]rial counsel rendered ineffective assistance when he failed to object and include in the Motion for New Trial as a basis for relief the prosecutor's impermissible action of calling attention to movant's exercising of his post-*Miranda* silence." According to Bey, "[a]ny reasonable counsel action under the same or similar circumstances would have immediately challenge[sic] this unlawful intrusion upon his client exercising [sic] of his constitutional right to remain silence [sic]." Bey claimed that credibility was the decisive issue in his case and that the State used the "impermissible attack" to gain an unfair advantage.

In its findings, the motion court denied relief, stating:

> Movant's first claim is for ineffective assistance of trial counsel because trial counsel did not object to (nor include in the motion for a new trial) direct testimony during the state's case where the witness said of Movant: "He did not waive his *Miranda* rights, and the interview was terminated."
>
> The issue was dropped at this point and defense counsel did not object, a strategy that harmonizes with his apparent trial strategy....
>
> The undisputed facts at trial place Movant at the place of the assault at the time of the assault. The near certainty that Movant knew what happened and to explain why he did not reveal his account until the day of trial. In view of these problems–and the overwhelming weight of the State's case–a reasonable trial strategy required that he address these issues. Defense counsel did so during Movant's own testimony. At that time, Movant explained that his refusal to tell investigators what happened was motivated by his desire not to be a "snitch or a rat." Defense counsel's earlier failure to object was a reasonable trial strategy and not error.

In light of counsel's apparent plan for Bey to later explain his actions,

-10-

Case 4:05-cv-00448-GAF   Document 13   Filed 09/12/05   Page 10 of 19

counsel would have realized that an objection to Koebel's statement would have been unnecessary because of the fact that Bey, in the defense's case-in-chief, was going to say the same thing and explain why. Bey makes no allegation that he would have not testified but for Koebel's statement. Indeed, in view of the strength of the evidence, the defense could have believed that Bey's only strategic hope of acquittal rested in testifying, and in testifying with substantial credibility. Bey's defense, in actuality, was that he was being charged with the assault as a retaliation for not telling investigators who actually did it.

During Bey's direct examination, he testified as follows:

> Q. Okay. Did an investigator attempt to interview you after this incident–
> A. Well–
> Q. – or at a later time did an investigator come to see you about this incident?
> [A.] Well, after I went in my cell and I was escorted to a holdover cell, yes, the investigator attempted to interview me.
> Q. *Why didn't you tell the investigator what happened to you at that point in time?*
> A. Well basically they was seeking information on who assaulted Mr. Collins, and they felt that I knew. *They wanted me to identify the individuals that was standing there on that flag area.* I refused to do that. I didn't refuse to do it because it's something that, you know I believe in. I refused to do it because I got to live there. *And I mean, basically it appeared to me that they wanted me to be a snitch or a rat for them.*
> Q. *What kind of problems would that cause you if you ratted out a fellow inmate?*
> A. I mean, that's the worst type of label that a person can possibly have on him in a prison cell.
> Q. What would happen to you if people found out you did rat an inmate out?
> A. A variety of things could happen. I mean, you could get hurt. You could get seriously hurt. I mean, you would–basically you would be looked at like scorn. I mean, people would look down on you, or some individuals may hurt you. But my point is this here. I have been locked up for nearly 19 years, and during that

-11-

> 19 years I have learned to mind my own business. I
> didn't touch that man. It's not my job, you know, to
> report on who did this or who did that. *I know I didn't
> do it, and that's all I was concerned with.* (Emphasis
> added.)

Because the defense intended during Bey's direct examination to ask Bey about his decision not to make a statement to an investigator, and the reason for the decision, it was not prejudicial that counsel allowed Koebel to state that Appellant refused to waive his right to remain silent.

In his amended motion, Bey also alleged that "[t]rial counsel rendered ineffective assistance when he asked questions of Movant during the defense case in chief which serve [sic] to inject Movant's exercise of his post-*Miranda* silence as an issue in this case." According to Bey, "[c]ounsel knew or should have known that Movant did not have to explain why he chose to exercise his post-*Miranda* silence. By posing the foregoing line of questioning, counsel 'open [sic] the door' for the State to severely impeach Movant's credibility." Bey also alleged that counsel's deficiency "was tantamount to depriving Bey of his only viable defense (Bey's credibility), which was the central issue in the case as noted by the State."

With regard to the claim that counsel was ineffective for asking Bey questions "which served to inject Movant's post-*Miranda* silence as an issue in the case," the motion court denied relief, stating, "as noted in Movant's first point, the raising of this issue is one of trial strategy. The tactic was entirely reasonable and not an error."

"[W]here the record reveals defense counsel's conduct constituted reasonable trial strategy, the post-conviction motion court may deny relief." *Eichelberger v. State*, 71 S.W.3d 197, 200 (Mo. App. 2002) (*quoting Holt v. State*, 24 S.W.3d 708, 710 (Mo. App. 1999)); *see also State v. Lacy*, 851 S.W.2d 623, 632 (Mo. App. 1993); *Fretwell v. Norris*, 133 F.3d 621, 627-28 (8th Cir. 1998) (where trial counsel could not remember his strategy for failing to call certain witnesses during evidentiary hearing and the strategy could be gleaned from the trial record, movant failed to overcome presumption of reasonable trial strategy).

With regard to the direct examination of Bey, the trial strategy is evident. Even though Bey could not have been required by the State to explain his silence, and even though no inference of guilt could be made by the jury

-12-

from the fact that he did not talk to investigators, counsel obviously concluded that the best defense for Bey was to show that even though Bey may have had an idea who committed the assault, he refused to be a snitch, and as a result, in retaliation, the investigators ended up requesting that Bey be charged. This defense explains Bey's reluctance to implicate anyone at trial, and his silence when contacted earlier, and shows that he was charged as an act of retaliation for his silence. In light of the strong evidence against Bey, coupled with the fact that Bey denied kicking or hitting Collins and refused to name a perpetrator (saying he "assumed" *someone* hit Collins), it was objectively reasonable for counsel to ask Bey about the conversation with investigators that led to his being charged. This questioning allowed Bey to explain that he did not come forward with information because being a "snitch" or a "rat" in prison was very dangerous. This was the heart of Bey's defense– that investigators retaliated against him because he would not implicate the guilty party. Thus, he was charged because he would not cooperate with the investigation, not because he was guilty. Counsel's presumed strategy of allowing Bey to put forth this defense, including allowing Bey to explain why he did not report his observations to investigators, and why, impliedly, he still is reluctant to name names, was reasonable.

Even if we were to assume that the failure to object during Koebel's testimony was due strictly to negligence and inattention rather than being part of a broader strategy, we can say absolutely that counsel's decision to later explain Bey's decision to remain silent would have mitigated much of the adverse effect of the jury having knowledge that Bey chose to remain silent. Indeed, because of the vagueness of Bey's trial testimony–*i.e.*, he assumed that someone attacked the correctional officer, but never, even at trial, pointed the finger at another prisoner–it was necessary to hint at reasons for the vagueness of his in-court testimony as well. This was accomplished by his raising the potentially very serious consequence of being a "snitch" in the prison. Therefore, even if we were to assume the worst as to counsel's original failure to object, it could not be said that there was ultimate prejudicial impact in view of the overall circumstances of the case. Accordingly, the trial court was not clearly erroneous in finding no warrant for an evidentiary hearing in the case as to the efforts of trial defense counsel.

(Respondent's Exhibit "10," p. 4-8) (emphasis in original).

The resolution of petitioner's second ground for relief by the state court did not result in "a decision

-13-

that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Terry Williams v. John Taylor, supra. Applying the Strickland standard of review to the facts as set forth in the record, the Court finds that trial counsel was not ineffective.

Ground 2 is denied.

### GROUND 3(a) - INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In Ground 3(a), petitioner alleges that his direct appeal counsel was ineffective for failing to argue on direct appeal that the state improperly introduced evidence of petitioner's post-arrest silence. In order to succeed on a claim of ineffective assistance of direct appeal counsel, petitioner must establish that: (1) his counsel's performance was unreasonable as viewed in the totality of the circumstances; and (2) his defense was prejudiced by counsel's action in that there is a reasonably probability that, but for counsel's unprofessional acts, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694-95 (1984); Schaeffer v. Black, 774 F.2d 865, 867 (8th Cir. 1985). Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. See, e.g., Strickland v. Washington, 466 U.S. at 687-90. Judicial scrutiny of counsel's performance must be highly deferential, id. at 689, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

On appeal from the denial of petitioner's Rule 29.15 motion, the Missouri Court of Appeals rejected this ground as follows:

-14-

In his amended motion, Bey also alleged that *appellate* counsel was ineffective for failing to argue "that the State violated Movant's right to due process of law and privilege against self-incrimination when the State introduced" Koebel's testimony "to the effect that Movant did not waive his *Miranda* right when interviewed by JCCC investigators." According to Movant, "[h]ad appellate counsel adequately investigated the record, she would have been armed with substantial evidence to show and argue that it was, infact [sic], the State and not Movant who injected the issue of Movant's post-*Miranda* silence into the case."

With regard to the claim of ineffective assistance of appellate counsel, the motion court denied relief, stating:

> In this case, the issue [of Bey's decision not to make a statement] was raised for a brief moment only. The reference was obscure. As noted earlier, Movant later raised the issue in detail, making Movant's denials and explanations the centerpiece of his defense. For these reasons, and due to the overwhelming evidence of guilt, there was no manifest injustice and the point would have failed on appeal. It is presumed that the action on the part of appellate counsel was a reasonable strategy. (Internal citations omitted.)

Had appellate counsel raised the issue of the State's introduction of Koebel's testimony about the interview on direct appeal, that issue would have been reviewed only for plain error, because trial counsel did not object to that testimony. (As already stated, the presumed strategy was to address the failure to make a statement head on, by acknowledging it, and explaining it as a part of the defense: that Bey was not guilty, and that he was charged in retaliation for non-cooperation). In any event, the claim now made (even if we ignored the strategy) was unpreserved. As a general rule, appellate counsel cannot be deemed ineffective for failing to raise an unpreserved claim. *Honeycutt v. State*, 54 S.W.3d 633, 650 (Mo. App. 2001).

Second, the record does not reflect that the issue of Koebel's testimony was a claim of obvious error involving a manifest injustice which would have required reversal had it been asserted. *See Reuscher*, 887 S.W.2d at 591; *Graham*, 969 S.W.2d at 759. Even assuming, *arguendo*, that the State's question to Koebel was improper, an appellate court must consider the fact that the State's comment was supported by evidence the

-15-

> defense also intended to introduce (that Bey did not give a statement). In any event, the comment was not reversible error in light of Bey's later plausible explanation as to why a prisoner would not comment to an investigator. In light of Bey's explanation of events and the strength of the State's case, there is no reasonable probability that even if appellate counsel had raised the issue of Koebel's testimony, such a claim would have been successful on appeal.
>
> Finally, if appellate counsel believed that trial counsel's failure to object to Koebel's testimony was proper trial strategy in view of counsel's intention to allow Bey to explain his silence and develop the defense of retaliatory charging which is evident from the record, the point could not have been argued in good faith. Appellate counsel is not required to make bad faith arguments.
>
> Ultimately, the record reflects that the actions of both trial and appellate counsel were reasonable and did not prejudice Bey. For the foregoing reasons, the motion court did not clearly err, and Movant's sole point must be denied.

(Respondent's Exhibit "10," p. 8-10).

The resolution of Ground 3(a) by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Terry Williams v. John Taylor</u>, <u>supra</u>. Applying the <u>Strickland</u> standard of review to the facts as set forth in the record, the Court finds that appellate counsel was not ineffective.

Ground 3(a) is denied.

## **PROCEDURAL DEFAULT - GROUND 3(b)**

In Ground 3(b), petitioner alleges ineffective assistance of direct appeal counsel for failing to raise

trial court error for sentencing petitioner as a prior offender. Respondent contends that Ground 3(b) is procedurally defaulted because petitioner failed to raise it on post-conviction appeal. The record reflects that respondent is correct.

> In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held
>
>> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

Petitioner failed to raise Ground 3(b) on appeal from the denial of his Rule 29.15 motion for post-conviction relief. (See Respondent's Exhibit "10," p. 3). Consequently, this ground for relief is procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). This Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

In his reply, petitioner does not state cause for his procedural default, rather he seems to attack the validity of his 1984 conviction, which was the basis for his sentencing enhancement. (See Doc. No. 11, p. 19-24). Even though petitioner has failed to demonstrate cause (and, therefore, we do not consider prejudice) for his procedural default, the Court can still reach the merits of his claims if he can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d

-17-

1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). A review of the record reflects that petitioner has failed to satisfy this test.

Petitioner has failed to show cause for and prejudice from his default of Ground 3(b). He also has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of these allegations is not required to prevent a fundamental miscarriage of justice. Murray v. Carrier, 477 U.S. at 495.

Ground 3(b) is denied.

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) all other pending motions are denied as moot.

    /s/ Gary A. Fenner  
GARY A. FENNER  
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri

Dated: 9/12/05